UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BAOLI YANG and
JIE YU,

        Defendants.
_____/

No. 1:20-CR-103

HON. PAUL L. MALONEY
United States District Judge

# UNITED STATES' TRIAL BRIEF

ANDREW BYERLY BIRGE
United States Attorney

DAVIN M. REUST
TIMOTHY P. VERHEY
Assistant United States Attorneys
330 Ionia Avenue, NW, Suite 501
Grand Rapids, MI 49501-0208
(616) 456-2404

**FACTUAL SUMMARY** .................................................................................................... 3

**CHARGES, STATUTES, AND ELEMENTS** .............................................................. 5

Count 1: Wire Fraud ............................................................................................................ 5

Count 2: Computer Intrusion Causing Damage .......................................................... 6

Aiding & Abetting ................................................................................................................. 7

**POTENTIAL EVIDENTIARY ISSUES** ..................................................................... 8

I.     The Government intends to call six witnesses to offer expert testimony on issues related to computers. ........................................................................................................... 8

II.    The Government has proposed several stipulations to streamline trial. ................. 9

III.   The Government anticipates issues around hearsay will arise at trial. ................. 10

   A.  Defendants cannot seek to admit their own, self-serving statements made during police interviews. ................................................................................................................ 10

   B.  Computer code is not hearsay. .............................................................................. 11

   C.  Background evidence is admissible. ..................................................................... 13

   D.  Calls to Top Flite management following the system outage are not hearsay. ..... 14

IV.   The Government intends to introduce an exhibit summarizing defendant's access to Top Flite's computer system. ........................................................................................ 15

   A.  The summary exhibit is admissible under Federal Rule of Evidence 1006. .......... 16

     i.   The summaries are based on voluminous records. ..................................... 17

     ii.  The Government previously provided the underlying documents and the summary charts to the defendants. ........................................................................... 17

     iii. The underlying documents are admissible. ................................................ 17

     iv. The summaries will be introduced through a knowledgeable witness. ..... 18

   B.  Alternatively, the summaries are admissible as secondary-evidence summaries under Federal Rule of Evidence 611(a). ................................................................................ 18

## FACTUAL SUMMARY

Top Flite Financial, Inc. (Top Flite) hired Yang in 2009 as an IT specialist, and it gave him credentials—a unique employee identification number, username, and password—to access the Top Flite computer system. Yang's primary job was to maintain the company's back office computer system, which handled loan documents, client files, and internal company data like personnel, expense, and payroll information. By contrast, Top Flite's front office computer system included a public-facing website, allowing customers and employees to interface with the Top Flite system.

Around 2010, Yang formed an IT business, Synchrobiz, which took over the Top Flite contract. Yang shared some Synchrobiz duties with his wife Yu. For the most part, Yang teleworked from his home in Okemos.

In early 2017, Yang took a second job on-site at the Michigan Public Power Authority (MPPA), a government entity where he had to clock in and out. By April 2019, Top Flite considered Yang's job performance mediocre, and they decided to terminate him. Before formally notifying him, Top Flite removed his administrator password from the system for security purposes. As soon as they did, their system crashed. Top Flite reluctantly contacted Yang to ask for assistance. Yang logged in remotely, and e-mailed Top Flite, saying "I see I've been terminated." Yang told Top Flite he "was not comfortable fixing the system" since he had been terminated, and he would help fix the computer outage only if he was given an automatically renewing, three-month, pre-paid contract.

Between April 27 and May 17, 2019, Top Flite's computers were repeatedly hacked by an intruder using various employees' credentials without their permission. The intruder moved money around in Top Flite's accounts, deleted loan files, and altered personnel data. Top Flite contacted its original IT specialist, who Yang replaced. The original IT specialist designed the back office system, and he tried to reset the system to an earlier date and remove Yang's credentials. But every time he removed Yang's credentials, the system crashed. The specialist eventually identified the computer code that Yang altered, which made it so that if Yang's password was changed, all of Top Flite's computer systems would crash.

Top Flite contacted the company that hosted its computer servers (Providence) to stop the hacking. Providence analyzed the internet address of the computer used to hack Top Flite's system, compared that to earlier logins by Yang when he worked for Top Flite, and determined Yang's internet address was the one hacking Top Flite's computers and manipulating data.

On May 24, 2019, police executed a search warrant at the defendants' home in Okemos, and police seized several laptop computers and mobile phones. Later forensic analysis of those devices showed that three of the computers were used to hack Top Flite's system between April 27 and May 17.

When police entered the residence, they observed Yu seated at a laptop, folding up papers, and attempting to put them in her pocket. Agents retrieved the papers, which had usernames and passwords for Top Flite employees. Yu agreed to an interview and claimed she was "helping" maintain Top Flite's system. She initially denied altering or

deleting any data on Top Flite's system. She later admitted, however, that she may have altered data while trying to test the system. She also admitted she had been insulted after learning Top Flite had removed her access to the system.

Yang pulled up in his truck while police were executing the search warrant, and he also agreed to an interview. Yang initially admitted knowing Top Flite had shut off his access to the system, but he claimed not to know why. He eventually admitted he knew about his termination, and that he accessed Top Flite's system after learning about it.

## CHARGES, STATUTES, AND ELEMENTS

### Count 1: Wire Fraud

Count 1 charges Yang and Yu with wire fraud, in violation of 18 U.S.C. § 1343. To establish this offense, the Government must prove four things:

1. The defendant knowingly participated in or devised a scheme to defraud in order to deprive another of money or property.

2. The scheme included a material misrepresentation or concealment of a material fact.

3. The defendant had the intent to defraud.

4. The defendant used wire, radio, or television communications or caused another to use wire, radio, or television communications in interstate commerce in furtherance of the scheme.

Sixth Cir. Pattern Jur. Instr. § 10.02.

Element 1: Yang and Yu devised a scheme to force Top Flite to enter an automatically renewing, three-month, pre-paid contract.

Element 2: Yang and Yu concealed the change in programming to Top Flite's computer system, as well as the fact that they were the intruders causing damage to Top Flite's system.

Element 3: Yang and Yu engaged in this conduct with intent to defraud Top Flite of money in the form of an IT contract.

Element 4: Yang and Yu used the Internet to accomplish their crime. Specifically, Yang sent his demand for the contract from his Yahoo e-mail account. Yahoo does not have servers in Michigan, so that e-mail necessarily traveled outside of Michigan. Additionally, Top Flite is a large company with offices in several states. Some of the changes made to Top Flite's computers involved transferring money from branches outside the state of Michigan.

## Count 2: Computer Intrusion Causing Damage

Count 2 charges Yang and Yu with engaging in computer intrusion causing damage, in violation of 18 U.S.C. § 1030(a)(5)(A). To establish this offense, the Government must prove two things:

1. The defendant knowingly caused the transmission of a program, information, code, or command.

2. By doing so, the defendant intentionally caused damage to a protected computer without authorization.

Fed. Crim. Jury Instr. 7th Cir. 1030(a)(5)(A) (2020 ed.).

Element 1: Yang and Yu both admitted accessing Top Flite's system after the Synchrobiz contract was terminated. The Government will also introduce evidence of forensic computer examinations of Top Flite's servers as well as Yang and Yu's home

computers. Those examinations confirm that Yang and Yu accessed Top Flite's system repeatedly, deleted information, and transferred money without authorization.

Element 2: Yang and Yu moved money around in Top Flite's accounts, deleted loan files, and altered personnel data. They did all of this while knowing Top Flite had terminated the Synchrobiz contract.

If the jury finds Yang or Yu guilty of these first two elements, the jury will also need to determine if the computer intrusion caused $5,000 or more in damages. The statutory maximum penalty is 10 years imprisonment if the damage was $5,000 or more. 18 U.S.C. §§ 1030(c)(4)(B)(i); 1030(c)(4)(A)(i)(I). The statutory maximum penalty is 1 year if the damage is less than $5,000. 18 U.S.C. § 1030(c)(4)(G).

The Government will prove the damage was greater than $5,000 through the testimony of Top Flite's CEO. He estimates Top Flite lost $2-3 million in revenue while the system was down and that Top Flite spent $561,451 to address the intrusion.

### Aiding & Abetting

The Government submits that the jury should receive the aiding and abetting jury instruction because Yang and Yu worked together in both the wire fraud and the computer intrusion. To establish either defendant is guilty as an aider and abettor, the Government must prove the following:

1. The crime of wire fraud or computer intrusion causing damage was committed.

2. The defendant helped to commit the crime or encouraged someone else to commit the crime.

3. The defendant intended to help commit or encourage the crime.

Sixth Cir. Pattern Jur. Instr. § 4.01.

Element 1: The Government will prove both crimes were committed as outlined above.

Element 2: The Government will introduce evidence the defendants worked together to commit these crimes. During police interviews of Yang and Yu, both acknowledged accessing the system after the Synchrobiz contract was terminated. Additionally, police seized one computer from the home that had an associated account for Yang and one that had an associated account for Yu; both computers showed access to Top Flite's system after the termination. Finally, the Government intends to introduce records from Yang's other employment—the Michigan Public Power Agency—which establishes that Yang was at his other job during times Yu accessed Top Flite's system.

Element 3: The Government will establish that Yang and Yu worked together to commit these crimes because they both benefitted financially from the Synchrobiz-Top Flite contract.

## POTENTIAL EVIDENTIARY ISSUES

**I. The Government intends to call six witnesses to offer expert testimony on issues related to computers.**

A witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. The party calling an expert witness need not, and indeed should not, formally "offer" the witness for the Court's acceptance as an expert. *See United States v. Johnson*, 488 F.3d 690, 697-98

(6th Cir. 2007). The admission of expert testimony is a matter within the sound discretion of the trial court. *United States v. Bonds*, 12 F.3d 540, 555-557 (6th Cir. 1994); *United States v. Langan*, 263 F.3d 613, 622 (6th Cir. 2001).

Here, the Government identified each of its six witnesses with expert testimony long ago, and neither defendant has raised an objection. On May 21, 2021, the Government informed counsel for both defendants of its intention to call Michigan State Police Information Technology Specialist Luke Thelen. (Ex. 1: Thelen Disclosure.) On October 27, 2021, the Government informed counsel for both defendants of its intention to call Charles Lowery, Rick Thering, and Tim Johnson from Providence Consulting, as well as Christopher Beaudrie and Zikar Momin from Top Flite Financial. (Ex. 2: Providence Disclosure; Ex. 3: Beaudrie Disclosure; Ex. 4: Momin Disclosure.) Each of these witnesses performed an analysis of computer systems in this case, and the Government intends to call them to discuss that analysis and their opinions about what that analysis shows.

**II.   The Government has proposed several stipulations to streamline trial.**

The Government proposed the following stipulations to defense counsel by email on January 31, 2022:

1. The parties stipulate and agree that the Internet Protocol (IP) Address associated with the address 3600 Beach Tree Lane, Okemos, Michigan 48664 was 68.61.175.164 from April 5, 2019 to May 17, 2019.

2. The parties stipulate and agree that on April 29, 2019, Yahoo's e-mail servers were located in New York, Nebraska, and Washington. Therefore, any e-mail

communications sent to or from a Yahoo user located in the state of Michigan on April 29, 2019 would necessarily transit a Yahoo email server located outside the state of Michigan.

3. The parties stipulate and agree that Government's Exhibit 3 are handwritten notes police seized from Jie Yu on May 24, 2019.

4. The parties stipulate and agree that Government's Exhibit 4 is the HP Pavilion laptop seized by police from 3600 Beach Tree Lane on May 24, 2019.

5. The parties stipulate and agree that Government's Exhibit 5 is the MacBook seized by police from 3600 Beach Tree Lane on May 24, 2019.

6. The parties stipulate and agree that Government's Exhibit 6 is the Dell laptop seized by police from Baoli Yang's truck on May 24, 2019.

7. The parties stipulate and agree that Government's Exhibit 14 constitutes a true and accurate copy of Baoli Yang's Michigan Public Power Agency employment records.

## III. The Government anticipates issues around hearsay will arise at trial.

### A. Defendants cannot seek to admit their own, self-serving statements made during police interviews.

Each of the defendants made multiple statements during their interviews by police, which are admissible against them under Federal Rule of Evidence 801(d)(2)(A) as admissions by a party-opponent. These admissions were the subject of the Governments Motion *in Limine* Regarding Defendants' Statements to Police. (R. 80: MIL, PageID.549-53.)

The defendants cannot offer their own statements through this rule because they are their own statements, not those of an opponent. *See* Fed. R. Evid. 801(d)(2); *see also United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses. Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury."); *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) ("[T]he rule of completeness is not designed to make something admissible that should be excluded. Right or wrong, this court has acknowledged that under *Costner*, exculpatory hearsay may not come in solely on the basis of completeness.") (quotations and citations omitted). The only way that the defendants can offer their own statements into evidence is to take the stand and be subject to full and complete cross examination.

### B. Computer code is not hearsay.

The Government intends to introduce computer code from three sources at trial. First, Providence consulting obtained computer code that identified when the Top Flite computer servers were accessed. Second, MSP IT Specialist Luke Thelen analyzed the defendants' computers, and he obtained computer code from them indicating when the defendants' computers accessed Top Flite's computers. Finally, MSP IT Specialist Luke Thelen extracted and analyzed the code that Yang changed, which booby trapped Top Flite's computer system.

-11-

Computer code does not constitute hearsay because it is not a statement from a person. Federal Rule of Evidence 801(c) defines hearsay as "a *statement* that … the *declarant* does not make while testifying…." (emphasis added). A computer is not a person, so it cannot make a statement. *Id.* at 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct."). And because a computer is not a person, it cannot be a declarant. *Id.* at 801(b) ("'Declarant' means the person who made a statement."). The Sixth Circuit addressed this very issue, concluding that an automated taser report was not hearsay because "[t]he report is neither a statement nor is it made by a declarant." *Patterson v. City of Akron, Ohio*, 619 F. App'x 462, 480 (6th Cir. 2015).

Because computer code does not constitute a statement from a person, it does not implicate the Confrontation Clause. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court clarified that the "primary object" of the Sixth Amendment's Confrontation Clause is to ensure the appearance of those witnesses who offer "testimonial hearsay." *Id.* at 53. But in *Patterson*, the Sixth Circuit held computer-generated information is not hearsay. *Patterson*, 619 F. App'x at 480 (reversing and remanding order of summary judgment after holding district court abused its discretion in excluding report produced by Taser as hearsay). So, it does not implicate the Confrontation Clause.[1]

---

[1] The circuits to directly address whether the output of a machine implicates the Confrontation Clause have held it does not. *United States v. Waguespack*, 935 F.3d 322, 334 (5th Cir. 2019), *cert. denied*, No. 19-6676, 2020 WL 129860 (Jan. 13, 2020) ("[W]e have not found any case to support Waguespack's position that the machine-generated materials are statements of a witness or trigger the Confrontation Clause."); *United States v. Ballesteros*, 751 F. App'x 579, 580 (5th Cir.) (per curiam) ("[Defendant] does not cite, and

**C. Background evidence is admissible.**

The Government intends to introduce background evidence at trial, specifically as it relates to the relationship between defendants' company, Synchrobiz, and Top Flite. Top Flite's CEO provided a statement that he had work performance issues leading up to his decision to terminate the contract with Synchrobiz, including a system outage that occurred approximately a year before Top Flite set out to terminate the Synchrobiz contract.[2]

This history testimony is necessary to help the jury understand what happened leading up to the hacking at issue. "The jury is entitled to know the 'setting' of a case," including the "time, place and circumstances of the acts which form the basis of the charge." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977), *cert. denied*, 431 U.S. 920 (1977). The Sixth Circuit "has consistently held that other acts, which are themselves part

---

we have not found, any decision by this court holding that the output of a computer program, such as a GPS report, amounts to a hearsay 'statement' under the Sixth Amendment."); *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) ("Because the satellite image and tack-coordinates pair weren't hearsay, their admission also didn't violate the Confrontation Clause."); *United States v. Lamons*, 532 F.3d 1251, 1264 (11th Cir. 2008) ("The exemption of machine-generated statements from the purview of the Confrontation Clause also makes sense in light of the purposes of confrontation."); *United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) ("[T]he Confrontation Clause does not forbid the use of raw data produced by scientific instruments, though the interpretation of those data may be testimonial."); *United States v. Washington*, 498 F.3d 225, 230 (4th Cir. 2007) ("[T]he statements to which Dr. Levine testified in court-the blood sample contained PCP and alcohol-did not come from the out-of-court technicians, and so there was no violation of the Confrontation Clause.").

[2] The Government considers this background evidence, not 404(b) evidence. To the extent defendants disagree, the Government submits that this notice satisfies the requirements of Rule 404(b); if it is character evidence at all, it shows defendants' motive, opportunity, knowledge, identity, and absence of mistake. On July 29, 2020, the Government produced the report in which Top Flite's CEO summarized his history with defendants.

of the 'setting' of a case, are admissible." *United States v. Davis*, 28 F.3d 1214 (table), 1994 WL 362061 (6th Cir. 1994) (citations omitted); s*ee also United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005). Admissible background evidence also includes "those acts, the telling of which is necessary to complete the story of the charged offense." *Frederick*, 406 F.3d at 761 (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). "Proper background evidence has a causal, temporal or spatial connection with the charged offense." *Id.*

### D. Calls to Top Flite management following the system outage are not hearsay.

Shortly after Top Flite's system went down and throughout the outage, Top Flite's CEO, sales manager, and accounting manager received calls from Top Flite branches across the country. The Government intends to elicit testimony that those calls were received to show that the system outage affected branches outside Michigan.

These questions from the Top Flite branches do not constitute hearsay for two reasons. First, they are questions, and "a question is typically not hearsay because it does not assert the truth or falsity of a fact. A question merely seeks answers and usually has no factual content." *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003). Second, the fact of receiving the calls constitutes a verbal act, not an assertion. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) Advisory Committee Notes; *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008) (holding a question was not hearsay because "it is the fact that the declaration was made,

and not the truth of the declaration, which is relevant"); *United States v. Brewer*, 332 F. App'x 296, 302 (6th Cir. 2009) ("The content of phone calls made to defendant's home while police were conducting a search by gamblers wishing to place bets were properly admissible as nonassertive verbal acts because they were offered to show the callers' belief that they could place illegal bets with defendant.") (parenthetical summarizing *United States v. Zenni*, 492 F.Supp. 464, 469 (E.D.Ky.1980)). The relevant fact about the calls received by Top Flite management from branches across the country is that those calls were received, not what was said. Indeed, the Top Flite managers will testify and be subject to cross examination about the fact that the Top Flite computer system went down.

**IV.    The Government intends to introduce an exhibit summarizing defendant's access to Top Flite's computer system.**

When Top Flite realized its computers were being hacked, it asked the company that hosted its computer servers—Providence—to determine who was doing the hacking. Providence reviewed the computer access logs in the form of a spreadsheet. That spreadsheet contains twenty tabs, and some of those tabs contain over twenty thousand individual rows. Many of the rows would be unhelpful to the jury because they involve access to the Top Flite system by people other than defendants. If presented in its original form, the exhibit would likely span tens of thousands of pages. So, the Government has prepared and provided summaries of the relevant entries, which now span about 150 pages. The Government intends to introduce these summaries as exhibits at the trial of this matter.

**A. The summary exhibit is admissible under Federal Rule of Evidence 1006.**

Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006. In applying Rule 1006, the Sixth Circuit has held that five requirements must be satisfied: "(1) the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place; (3) the underlying documents must be admissible in evidence; (4) the summary must be accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation." *United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008); *accord United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2005).

"Once admitted, a Rule 1006 exhibit constitutes substantive evidence." *Peat Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159 (11th Cir. 2004). "The materials or documents on which a Rule 1006 exhibit is based . . . need not be admitted into evidence." *Id.* at 1160. When a summary chart is admitted under Rule 1006, no contemporaneous jury instruction is required. *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998) ("[I]t is generally inappropriate to give a limiting instruction for a Rule 1006 summary.").

Here, the Government's summaries satisfy the five requirements.

### i. The summaries are based on voluminous records.

Under Rule 1006, "the documents must be sufficiently numerous as to make comprehension difficult and inconvenient." *Bray*, 139 F.3d at 1109. This element is met here. If the spreadsheet were presented in its original format, it would span thousands of pages, which would make presentation and comprehension unwieldy.

### ii. The Government previously provided the underlying documents and the summary charts to the defendants.

On August 6, 2020, the IP logs were provided to defense counsel. On January 28, 2022, the summary charts were provided to defense counsel.

### iii. The underlying documents are admissible.

The materials underlying a Rule 1006 summary need not be admitted; they only need to be "admissible." *Moon*, 513 F.3d at 545. This underlying document contains information created and captured by computers, so as outlined in Section III.B, the underlying information is not hearsay and is admissible.

In preparing the summaries, the Government has presented the information in a fair and even-handed manner—the proposed exhibits simply remove the irrelevant information. The summaries do not include "the conclusions of or inferences drawn by the proponent of the chart." *Bray*, 139 F.3d at 1110. Rather, the summaries properly reflect and consolidate information contained in underlying documents; they are not "argumentative." *United States v. Younes*, 194 F. App'x 302, 311-312 (6th Cir. 2006).

Moreover, as noted above, the proposed summaries have been disclosed in advance of trial, providing the defense with an opportunity to object. However, objections that the summaries "may contain inaccuracies, ambiguities, or omissions"

have been held to "go to the weight and not the admissibility of the evidence." *United States v. Rizk*, 660 F.3d 1125, 1131 n.2 (9th Cir. 2011) (chart based on real estate records was admissible under Rule 1006).

### iv. The summaries will be introduced through a knowledgeable witness.

At trial, the Government will call witnesses from Providence Consulting that extracted the information in the original spreadsheet. Those witnesses will describe how and why they captured this information, as well as why this information is relevant.

### B. Alternatively, the summaries are admissible as secondary-evidence summaries under Federal Rule of Evidence 611(a).

If for some reason the defendants believe the requirements of Rule 1006 are not met, the summary is also admissible under Rule 611(a). *Bray*, 139 F.3d at 1112. Rule 611(a) states, "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). A summary admitted under this Rule is a hybrid evidentiary chart called a "secondary-evidence summar[y]." *Id.* These summaries are a "a combination of (1) [Rule 1006 summaries] and (2) [pedagogical-device summaries], in that they are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case." *Id.* The court admits the summaries in addition to the evidence that they summarize, not in lieu of the evidence. *Id.* They are admitted because "such summaries so accurately and reliably summarize complex or difficult evidence that is

-18-

received in the case as to materially assist the jurors in better understanding the evidence." *Id.*; *see also United States v. Campbell*, 845 F.2d 1374, 1381 (6th Cir. 1988) (the Sixth Circuit has "recognized that summary charts are admissible not only under Rule 1006, but by the 'established tradition' in the Sixth Circuit, and others, permitting introduction of summary evidence with a proper limiting instruction.").[3]

When secondary-evidence summaries are admitted, "the jury should be instructed that the summary is not independent evidence of its subject matter, and is only as valid and reliable as the underlying evidence it summarizes." *Id.* Additionally, the jury may consider Rule 611(a) summary charts in their deliberations. *United States v. Johnson*, 54 F.3d 1150, 1161, n.11 (4th Cir. 1995).

If the Court determines the summaries are not admissible under Rule 1006, it should admit them under Rule 611(a). In this situation, the Government would admit the underlying spreadsheet as evidence. The summaries will then also be admitted because they "accurately and reliably summarize complex or difficult evidence" in a manner that will assist the jurors in understanding what happened here. *Id.* The summaries provide a convenient and accessible way for the jurors to follow and understand the access to Top Flite's computers that took place.

---

[3] The First, Second, Fourth, Fifth, and Seventh Circuits have also recognized that in complex criminal cases, it is proper to admit "summary charts" that organize already admitted exhibits. *United States v. Milkiewicz*, 470 F.3d 390, 396-97 (1st Cir. 2006); *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989); *United States v. Johnson*, 54 F.3d 1150, 1158-60 (4th Cir. 1995); *United States v. Stephens*, 779 F.2d 232, 239 (5th Cir. 1985); *United States v. Robbins*, 197 F.3d 829, 836 (7th Cir. 1999).

                                        Respectfully submitted,

                                        ANDREW BYERLY BIRGE
                                        United States Attorney

Dated: February 1, 2022            */s/ Davin M. Reust*
                                        DAVIN M. REUST
                                        TIMOTHY P. VERHEY
                                        Assistant United States Attorneys
                                        P.O. Box 208
                                        Grand Rapids, Michigan 49501-0208
                                        (616) 456-2404